UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| TARA J. ROY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CORRECT CARE SOLUTIONS, LLC; | ) |
| | ) |
| STATE OF MAINE, DEPARTMENT OF CORRECTIONS; | ) |
| | ) |
| RODNEY BOUFFARD, individually, | ) |
| | ) |
|     and | ) |
| | ) |
| TROY ROSS, individually, | ) |
| | ) |
|     Defendants | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff, Tara J. Roy, hereby complains against Defendants, Correct Care Solutions, LLC ("CCS"); the State of Maine, Department of Corrections ("DOC"); Rodney Bouffard, in his individual capacity; and Troy Ross, in his individual capacity, as follows:

**JURISDICTION AND ADMINISTRATIVE PROCEEDINGS**

1) This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a; 42 U.S.C. § 1983; the First Amendment to the United States Constitution ("First Amendment"); the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection"); the Maine

1

Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 et seq.; and the Maine Whistleblowers' Protection Act, 26 M.R.S. § 831 et seq. ("WPA").

2) This court has proper subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

3) This court has proper supplemental jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4) On May 26, 2015, Plaintiff filed a charge of employment discrimination against CCS and DOC with the Maine Human Rights Commission ("MHRC") and the Equal Employment Opportunity Commission ("EEOC").

5) On May 3, 2016, the MHRC issued Plaintiff a right-to-sue letter pursuant to the MHRA, 5 M.R.S. § 4612(6).

6) On July 13, 2016, the United States Department of Justice issued Plaintiff a notice of right to sue pursuant to Title VII, 42 U.S.C. §§ 2000e-5(f)(1), which notice was received on July 22, 2016.

## PARTIES

7) Plaintiff is a citizen of the United States and the State of Maine who resides in the City of Lewiston, County of Androscoggin, State of Maine.

8) Defendant CCS is a Kansas limited liability company with offices in the City of Augusta, County of Kennebec, State of Maine.

9) Defendant DOC is a department of the State of Maine that operates the Maine State Prison ("MSP") in Warren, Maine.

10) At all material times, CCS contracted with the DOC to provide healthcare services to inmates at the MSP.

11) At all material times, Defendant Rodney Bouffard was employed by the DOC as the Warden at the MSP.

12) This complaint is brought against Defendant Bouffard in his individual capacity.

13) At all material times, Defendant Troy Ross was employed by the DOC as a Deputy Warden at the MSP.

14) This complaint is brought against Defendant Ross in his individual capacity.

15) At all material times, Defendants Bouffard and Ross were acting within the scope of their employment and under color of state law.

16) This action properly lies in the District of Maine pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

17) This action is properly filed and shall be tried in Portland because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Knox County, Maine.

18) At all material times, Defendants CCS and DOC were engaged in an industry affecting commerce and had 15 or more employees for each working day in each of 20 or more calendar weeks.

## STATEMENT OF FACTS

19) On August 13, 2012, Plaintiff starting working as a Licensed Practical Nurse employed by CCS at the MSP under a contract between CCS and the DOC.

20) Plaintiff was directly supervised by a Director of Nursing ("DON") and Health Services Administrator ("HSA"), who were CCS employees.

21) Around April or May 2014, Plaintiff became the sick call nurse in the medical clinic at the MSP.

22) Starting in June or July 2014, Plaintiff complained regularly to the DON and HSA that the MSP Medical Officer assigned to protect her from dangerous inmates was frequently not present when Plaintiff and other medical staff were alone in exams rooms with inmates, which created a safety risk to Plaintiff and other medical staff.

23) Plaintiff also reported to the DON and HSA that the Medical Officer turned inmates away from the diabetic line for hygiene reasons, which put inmates' safety at risk.

24) Plaintiff also reported to the DON and HSA that MSP corrections officers ("CO") were asking her to share confidential medical information about inmates. Plaintiff complained that the COs were retaliating against her because she would not provide them with the information.

25) On July 16, 2014, Plaintiff emailed the HSA requesting that that the HSA communicate with the DOC to inform the COs that medical staff will not talk with them about inmate medications, the reasons inmates were going to the medical clinic, or provider's orders. She stated that she and other medical staff were getting frequent calls from COs asking about inmate medications and why they were going to the clinic. She stated that the officers were getting mad, that quite a few were no longer speaking with her, and that one officer had threatened to file a grievance against her. She stated that two COs had screamed at her and hung up the phone on her because she would not give them information about inmate medications.

26) The following day, Plaintiff emailed the HSA and the DON that the Medical Officer would not speak with her and ignored three of her requests that a sick inmate be brought to the clinic.

27) The medical information the COs were seeking about the inmates was confidential by statute, and the COs were not authorized to receive the information.

28) On July 23, 2014, Plaintiff emailed the HSA that the Medical Officer was nowhere to be found despite there being an inmate in the clinic, and that the Medical Officer had not responded promptly to a "man down."

29) On July 24, 2014, Plaintiff again emailed the HSA to complain about the Medical Officer leaving an inmate unattended in an exam room, which created a safety risk.

30) On July 31, 2014, Plaintiff again emailed the HSA about the Medical Officer being absent from the clinic, which created a safety risk.

31) On August 1, 2014, Plaintiff again emailed the HSA that COs did not have the right to be asking medical staff about inmate medical issues.

32) On August 4, 2014, Plaintiff emailed the HSA that the Medical Officer had told her to "stop being a bitch," and that he had said, "now I understand why so many people hate you."

33) On August 4, 2014, Plaintiff emailed the HSA that a CO had asked her for medical information about an inmate and she had refused to provide it.

34) On August 26, 2014, Plaintiff filed an Incident Report with CCS and DOC that the Medical Officer had refused to bring an inmate to the clinic as required and had hung up the phone on Plaintiff while calling Plaintiff a "bitch."

35) In response to Plaintiff's complaints, the DON and HSA told her that Defendant Ross was getting upset with Plaintiff for making complaints.

36) The HSA told Plaintiff that Defendant Ross said that Plaintiff was not allowed to make any more complaints about the Medical Officer.

37) The HSA also stated that it would be better if Plaintiff did not complain about any of the Medical Officers.

38) In August 2014, Plaintiff complained to the DON that the Medical Officer had been harassing her. Plaintiff had initially gotten along with the Officer, but he became angry with her when she rejected his sexual advances. After that, he sent Plaintiff angry text messages; screamed at her over the phone at work while he was working around inmates; and he called her a "bitch" on two occasions, once in a pod with inmates present and once to her face.

39) Plaintiff felt that the Medical Officer was retaliating against her because she rejected his sexual advances.

40) In response to Plaintiff's complaint, the DON took photographs of the text messages from the Medical Officer and emailed them to the CCS Regional Vice President and head of the CCS Maine Regional Office.

41) The CCS Vice President brought Plaintiff's complaint to Defendant Ross.

42) Defendant Ross responded by stating that he did not have time to deal with Plaintiff's complaint and to bring it back another time.

43) In early September 2014, Plaintiff confronted a MSP Sargent about a comment Plaintiff was told by a CO that the Sargent had made about her. In discussing an inmate medical emergency call that had been placed, the Sargent was described to have stated that it had been

made "to get [Plaintiff] off her ass and moving." When Plaintiff confronted the Sargent and asked why he had made the comment, he became very upset and denied making it.

44) Pursuant to the DON's request, Plaintiff filed an Incident Report with CCS and the MSP relating to the alleged comment.

45) On September 24, 2014, Plaintiff filed an Incident Report with CCS and the MSP complaining about sexual harassment by a CO; retaliation by the same CO for Plaintiff's refusing to provide him with her telephone number; and retaliation by another CO for her complaints against the Medical Officer, in that the CO was spreading sexual rumors about her and writing reports to try to get her fired.

46) Based on information and belief, Defendants Bouffard and Ross were aware of Plaintiff's complaints described above and had the authority on behalf of the DOC to stop the harassing, retaliatory, and unsafe conduct.

47) Defendants Bouffard and Ross failed to take prompt and appropriate action to stop the conduct.

48) Despite Plaintiff's complaints, the harassing, retaliatory, and unsafe conduct continued.

49) Due to the conduct, Plaintiff wrote to CCS requesting a transfer within CCS to a different correctional facility. Plaintiff stated that she felt that she was being unfairly targeted because of her gender as a young, single woman working in a mostly male environment.

50) Despite her request, CCS did not transfer Plaintiff.

51) On September 26, 2014, CCS placed Plaintiff on unpaid administrative leave while the DOC investigated Plaintiff.

52) At that time, Defendant Ross had threatened to strip Plaintiff's security clearance because she was involved in too many investigations into her complaints.

53) On September 29, 2014, a MPS Unit Manager interviewed Plaintiff very briefly to go over the incident report she had prepared relating to the MSP Sargent.

54) On October 2, 2014, Defendant Bouffard emailed CCS stating that Plaintiff was no longer allowed to enter the MSP, effective immediately.

55) Based on information and belief, Defendant Ross participated in the decision and recommended that Plaintiff be barred from the MSP.

56) Defendants Bouffard and Ross barred Plaintiff from the MSP because she engaged in the above-described activity protected under the First Amendment, the Equal Protection Clause, Title VII, the MHRA, and the WPA.

57) CCS interpreted the email from Defendant Bouffard to mean Plaintiff was stripped of her security clearance with DOC altogether.

58) Later that day, CCS terminated Plaintiff's employment, stating that it was because the DOC had stripped her of her security clearance, which meant that she could not work in any DOC facility.

59) Defendants Bouffard and Ross knew or reasonably should have known that the practical effect of their decision to bar Plaintiff from the MSP was that Plaintiff's employment with CCS would be terminated.

60) CCS knew or reasonably should have known that the DOC barred Plaintiff from the MSP because she engaged in activity protected under Title VII, the MHRA, and the WPA.

61) CCS terminated Plaintiff's employment because she engaged in activity protected under Title VII, the MHRA, and the WPA.

62) Defendants acted intentionally and with malice or reckless indifference to Plaintiff's rights under the First Amendment, the Equal Protection Clause, Title VII, the MHRA, and the WPA.

63) As a result of Defendants' unlawful discrimination against Plaintiff as alleged herein, Plaintiff has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, emotional distress, and other pecuniary and non-pecuniary losses.

64) Plaintiff has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and she will continue to suffer irreparable injury from her treatment by Defendants unless they are enjoined by this court.

## COUNT I: TITLE VII
## VERSUS CCS

65) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

66) The harassing conduct by the MSP staff described above was directed at Plaintiff because of her sex and because she opposed practices that would be a violation of Title VII.

67) The harassing conduct was unwelcome.

68) It affected the terms, conditions, or privileges of Plaintiff's employment and created an intimidating, hostile, and offensive working environment.

69) It was both objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Plaintiff in fact did perceive it to be so.

70) CCS knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

71) CCS is liable for the hostile environment created by the MSP staff, in violation of Title VII.

72) The conduct described above by MSP staff and CCS also constitute materially adverse actions taken against Plaintiff because she engaged in protected activity under Title VII, in violation of Title VII.

73) CCS is liable for retaliation in violation of Title VII.

74) CCS is also liable for discharging Plaintiff because she opposed practices made unlawful by Title VII, in violation of Title VII.

## COUNT II:  MHRA
## VERSUS CCS

75) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

76) The harassing conduct by the MSP staff described above was directed at Plaintiff because of her sex, because she opposed practices that would be a violation of the MHRA, and because she engaged in protected activity under the WPA.

77) The harassing conduct was unwelcome.

78) It affected the terms, conditions, or privileges of Plaintiff's employment and created an intimidating, hostile, and offensive working environment.

79) It was both objectively and subjectively offensive, such that a reasonable person would find it hostile and abusive, and Plaintiff in fact did perceive it to be so.

80) CCS knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

81) CCS is liable for the hostile environment created by the MSP staff, in violation of the MHRA.

82) The conduct described above by MSP staff and CCS also constitute materially adverse actions taken against Plaintiff because she engaged in protected activity under the MHRA, in violation of the MHRA.

83) CCS is liable for retaliation in violation of the MHRA.

84) CCS is also liable for discharging Plaintiff because she opposed practices made unlawful by the MHRA and the WPA, in violation of the MHRA.

## COUNT III: MHRA
## VERSUS DOC

85) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

86) The DOC incited, compelled, or coerced CCS to terminate Plaintiff's employment because she engaged in activity protected under the WPA and the MHRA; intimidated, threatened, and interfered with Plaintiff in the exercise or enjoyment of the rights granted or protected by the MHRA; obstructed or prevented CCS from complying with the MHRA; and discriminated against Plaintiff because she opposed acts or practices that are unlawful under the MHRA or because she made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under the MHRA, all in violation of the MHRA.

### COUNT IV – EQUAL PROTECTION
### VERSUS BOUFFARD AND ROSS

87) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

88) Defendants Bouffard and Ross violated Plaintiff's rights to Equal Protection by failing to stop the MSP staff's sexual harassment and retaliation against Plaintiff for complaining about sexual harassment, and by themselves retaliating against Plaintiff for complaining about sexual harassment.

### COUNT V – FIRST AMENDMENT
### VERSUS BOUFFARD AND ROSS

89) Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

90) Defendants Bouffard and Ross violated Plaintiff's rights under the First Amendment by failing to stop the MSP staff's retaliation against Plaintiff for complaining about matters of public concern, and by themselves retaliating against Plaintiff for complaining about matters of public concern.

### DEMAND FOR JURY TRIAL

91) Plaintiff demands a trial by jury on all matters to which Plaintiff has a right to trial by jury.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a)  Enter Judgment in her favor;

(b) Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

(c) Grant Plaintiff a permanent injunction enjoining Defendants, their officers, agent, successors, employees, attorneys and assigns and other representatives, and all persons acting in concert with them and at their directions, from engaging in any conduct which retaliates against Plaintiff for exercising her rights under the First Amendment, Equal Protection, Title VII, the MHRA, and the WPA;

(d) Enjoin Defendants, their agents, successors, employees, and those acting in concert with Defendants from continuing to violate the rights of the Plaintiff;

(e) Order Defendant CCS to employ Plaintiff as if none of the discrimination had occurred or, in lieu of employment if such employment is determined to be impracticable, order front pay and benefits;

(f) Award Plaintiff back pay, lost employment benefits, other lost compensation, and interest on those amounts;

(g) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(h) Award Plaintiff an amount to offset the state and federal taxes she will be required to pay for compensatory damages and any increased taxes she will have to pay because she has received a lump sum for lost wages, employment benefits, or other lost compensation;

(i) Award Plaintiff nominal damages;

(j) Award Plaintiff punitive damages in an amount to be determined at trial of this matter;

(k) Award Plaintiff attorney's fees, including legal expenses, expert witness fees, and costs of suit;

(l) Award Plaintiff prejudgment interest; and

(m) Grant Plaintiff such other and further relief as may be just and proper.

Dated: July 22, 2016          /s/ John P. Gause
_____
John P. Gause, Esq., Bar No. 8192
Eastern Maine Law, LLC
77 Exchange Street, Suite 300
Bangor, ME 04401
(207) 947-5100
jgause@easternmainelaw.com

ATTORNEY FOR PLAINTIFF