<strong>UNITED STATES DISTRICT COURT<br>DISTRICT OF MAINE</strong>

| | |
|---|---|
| TARA ROY,<br><br>　　　　PLAINTIFF,<br><br>v.<br><br>CORRECT CARE SOLUTIONS, LLC, et al.<br><br>　　　　DEFENDANT. | Civil Action No. 1:16-CV-00383-JDL |

### DEFENDANT'S PRETRIAL MEMORANDUM

Defendant Correct Care Solutions, LLC ("CCS") submits this Pretrial Memorandum pursuant to Local Rule 16.4(b).

### Factual Statement

CCS provides healthcare services to correctional institutions throughout the country. CCS contracts with the Maine Department of Corrections ("MDOC") to provide healthcare services to the inmates at the Maine State Prison ("MSP") in Warren, Maine.

On August 2, 2012, CCS offered Roy a position as a Licensed Practical Nurse at the MSP. The offer letter, which Roy accepted, specifically states that, "[y]ou must obtain and keep a valid security clearance throughout your employment with CCS in order to be eligible for continued employment with CCS." Roy's job description also states that the position requires maintenance of a security clearance. The Security Policy in the Team Member Manual further states:

> Your employment is contingent upon initial and continued security clearance as defined by institutional policies. Any CCS team member who loses security clearance will no longer be employable by CCS and will be terminated.

During Roy's employment with CCS, Robin Cross-Snell was the Director of Nursing for CCS at the Maine State Prison and Elisabeth Lamson was the Health Services Administrator for CCS at the Maine State Prison.

On February 5, 2013, Roy complained that Corrections Officer Snow, who was assigned to work in the medical clinic, was sexually harassing her. More specifically, Roy complained that Officer Snow made comments about Roy being from Lewiston, which she perceived as being lower class, and that Officer Snow made comments about Roy being blonde and female.

Roy also claims that Officer Snow took her hand and twisted her wrist around until she dropped to her knees. Roy further claims that Officer Snow spanked her on one occasion. Roy waited for a month to complain about the hand squeeze and, when she reported it, she did not report the spanking.

When Roy complained about Officer Snow, the MDOC investigated the complaint and found insufficient evidence to support the allegations. Nevertheless, Officer Snow was moved out of the medical clinic and Roy no longer worked directly with him.

On August 26, 2014, Roy filled out an incident report in which she complained that Corrections Officer Parrow had called her a bitch. That same day, Robin Snell investigated Roy's report and specifically asked Officer Parrow if he had called Roy a bitch. Parrow denied calling Roy a bitch and said that she was "friggin lying and that he was sick of her shit."

On September 12, 2014, Roy filed another Incident Report in which she claimed that Officer Garrido told her that Sergeant Doyle stated that another ICS call (inmate medical emergency call) was needed to "get Tara off her ass and moving." This report was also investigated and Sergeant Doyle denied making the statement about Roy.

On September 23, 2014, Roy filed another Incident Report in which she claimed that Officer DeGuisto asked for her phone number during an exchange on Facebook and, when she refused to provide it, he started to harass her. This report was also investigated, but could not be substantiated based on the contents of the Facebook messages.

On September 26, 2014, Roy claimed that Corrections Officers King and Snodgrass left inmates unattended in the clinic for a long period of time. Captain Melquist asked Roy to prepare an Incident Report regarding her complaint, but she refused to do so because she claimed that Deputy Warden Ross told her that she could not make any more reports. Because of Roy's refusal, another nurse prepared the Incident Report. Following the report, the MDOC began an investigation of the Incident Report, including a review of the video surveillance of the infirmary during the period of time in question. Based on the review of the video as well as interviews with the Corrections Officers, the MDOC determined that the complaint was untrue.

On September 26, 2014, Roy was suspended with pay pending the outcome of the MDOC's investigation regarding Roy's conduct. On October 2, 2014, Rodney Bouffard, the Warden at the Maine State Prison, notified CCS that Roy would no longer be allowed to enter the prison. More specifically, Bouffard stated that Roy misrepresented the truth and failed to follow a directive.

On October 2, 2014, after receiving the notice from Bouffard, Elisabeth Lamson prepared the termination paperwork for Roy in which Lamson recommended that Roy's employment be terminated because she had lost her security clearance in violation of established company policy.

Roy claims that she was subjected to sexual harassment and retaliated against by CCS in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") the Maine Human Rights Act ("MHRA") and the Maine Whistleblower Protection Act ("MWPA").

Roy cannot prevail on her claim of sexual harassment because: (1) the conduct alleged does not rise to the level of unlawful sexual harassment; (2) the alleged conduct was not directed at Roy because of her sex; (3) the alleged conduct was not subjectively offensive; and (4) CCS cannot be held liable for the conduct that Roy complains about because (a) CCS exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) Roy unreasonably failed to take advantage of the preventive or corrective measures available to her. With respect to Roy's retaliation claims under Title VII, the MHRA, and the MWPA, Roy cannot demonstrate that she engaged in protected activity or that there was a causal connection between her alleged protected activity and her termination nor can she demonstrate pretext.

## Other Defenses

1. Roy has failed to mitigate her alleged damages.

2. CCS' actions were based on legitimate, non-discriminatory and non-retaliatory reasons.

3. At all times, CCS acted in good faith with respect to Roy.

4. Roy is not entitled to some or all of the specific relief requested in the Complaint, including, but not limited to, injunctive relief, reinstatement, back pay, lost employment benefits, other lost compensation, compensatory damages, offsets of state/federal taxes, nominal damages, punitive damages, liquidated damages, prejudgment interest and/or costs and attorneys' fees.

5. Certain of Roy's claims are barred, in whole or in part, by the relevant statute(s) of limitations.

6.      Roy is not entitled to recover punitive damages, on the ground that CCS' conduct does not meet the standard for an award of such damages.

### Controverted Points of Law / Evidentiary Issues

CCS incorporates by reference the MDOC's points of law set forth in its Pretrial Memorandum regarding back pay, front pay, reinstatement, fringe benefits, tax offset or "gross up, nominal damages and prejudgment interest.

Punitive Damages.  Under the Civil Rights Act of 1991, punitive damages are available only if the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981(a)(b)(1).  In 1999, the Supreme Court addressed the standard of proof necessary to obtain punitive damages, and concluded that the defendant's state of mind, rather than the egregiousness of the discriminatory conduct, determines whether punitive damages may be awarded, and that punitive damages are available only in cases in which the employer, at a minimum, has engaged in discriminatory action "in the face of a perceived risk that its actions will violate federal law." *Kolstad v. Am. Dental Ass'n*., 527 U.S. 526, 535-36 (1999). Accordingly, in order to obtain an award of punitive damages, Roy must prove, by a preponderance of the evidence, that CCS acted "with malice or reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981 a(b)(1).  *See also EEOC v. Ind. Bell Tel. Co*., 214 F.3d 813, 820 (7th Cir. 2001) (showing of malice or reckless indifference requires proof that defendant almost certainly knew that what he was doing was wrong) (vacated on other grounds); *Hardin v. Caterpillar, Inc*., 227 F.3d 268, 270 (5th Cir. 2000) (noting that proof of pretext and discrimination is not necessarily sufficient to prove malice or reckless indifference); *Romano v. U-Haul Intern*., 233 F.3d 655, 669 (1st Cir. 2000)

(punitive damages available in Title VII cases where employer engaged in discriminatory conduct in the face of a perceived risk).

Similarly, under the MHRA, punitive damages are available only if the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless disregard to the rights of an aggrieved individual protected by this Act." 5 M.R.S.A § 4613 (2)(B)(8)(c). In addition, under Maine law, Roy must prove her entitlement to punitive damages by clear and convincing evidence. *Batchelder v. Realty Res. Hospitality, LLC*, 2007 ME 17, ¶ 22, 914 A.2d 1116, 1124 (2007).

Under *Kolstad*, the Supreme Court also created an affirmative defense to punitive damages for employers who make good-faith efforts to comply with the requirements of the anti-discrimination laws. 527 U.S. at 545-46. Specifically, the court concluded that an employer who can demonstrate that it had made good-faith efforts to comply with the anti-discrimination laws could not have acted with "malice or reckless indifference" to the rights protected by those laws and, therefore, the employer could not be held liable for punitive damages. *Id.*

CCS anticipates that there will be evidentiary issues regarding Roy's employment at Riverview Psychiatric Hospital, her work-related injury, and her subsequent medical treatment. CCS also anticipates that there will objections regarding several of Roy's proposed witnesses who were never identified during the course of discovery. Here, Roy did not identify any expert witnesses in this matter and should not now be allowed to present expert testimony.

CCS reserves the right to raise substantive and procedural issues of law by motions *in limine* according to the schedule set by the Court in its Final Pretrial Order.

**Proposed Stipulations**

1. Copies of documents that have been exchanged to date by the parties are authentic and there is no need to produce the original of those documents for introduction into evidence so long as the document is otherwise admissible.

2. A conference of counsel should be held prior to trial to mark exhibits, prepare stipulations of fact, and stipulate to the admissibility of other evidence.

**Proposed Case Specific Jury Questionnaires**

1. Have you or any member of your family or household or any close friend ever been disciplined, terminated or laid off from any job for a reason that was considered unfair or discriminatory? If so, please give the details of the discipline, termination, or layoff.

2. Have you or any member of your family or household or any close friend ever been a victim of sexual harassment in the workplace?

3. Have you or any member of your family or household or any close friend ever filed a claim of discrimination with the Equal Employment Opportunity Commission, the Maine Human Rights Commission, or any other state or federal agency charged with reviewing claims of discrimination?

4. Have you or any member of your family or household or any close friend ever been employed by CCC or the MDOC? If the answer is "yes" for each such person, please describe the person, the employment position and dates of employment.

**Witnesses**

CCS may call one or more of the persons listed in the witness list attached as <u>Appendix A</u>. CCS reserves the right to call for purposes of rebuttal or impeachment witnesses not listed in its witness list. CCS does not represent that by listing a witness in its witness list that it will produce or call such witness at trial. Local Rule 16.4(b). Also, CCS reserves the right to call any and all witnesses identified, listed or called by Plaintiff or the MDOC. CCS reserves the right to supplement or amend its witness list within a reasonable time before trial with notice to the Court and to Plaintiff and the MDOC.

**Exhibits**

CCS may use as exhibits at trial any or all of the documents listed in the exhibit list attached at <u>Appendix</u> <u>B</u>. CCS reserves the right, for purposes of rebuttal or impeachment, to use or seek to introduce into evidence exhibits not listed in its exhibit list. CCS reserves the right to use or seek to introduce any and all exhibits listed, identified, or used by Plaintiff or the MDOC. CCS does not represent that by listing an exhibit in its exhibits list that it will produce or seek to introduce such exhibit at trial. Local Rule 16.4(b). CCS reserves the right to supplement or otherwise amend its exhibit list within a reasonable period of time before trial with notice to the Court and to Plaintiff.

Dated: May 28, 2019         Respectfully submitted,

*/s/ Melinda J. Caterine*
Melinda J. Caterine
LITTLER MENDELSON, P.C.
1 Monument Square, Suite 600
Portland, ME 04101
207-774-6001
mcaterine@littler.com

Attorney for Defendant
Correct Care Solutions, LLC

## **CERTIFICATE OF SERVICE**

I, Melinda J. Caterine, hereby certify that I electronically filed the foregoing document using the CM/ECF system on the date noted below, which will send notification of such filing to the following:

John P. Gause, Esquire
Eastern Maine Law, LLC
77 Exchange Street, Suite 300
Bangor, ME 04401

Valerie A. Wright, Esquire
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006

Dated:  May 28, 2019

*/s/ Melinda J. Caterine*
Melinda J. Caterine
Littler Mendelson, P.C.
1 Monument Square, Suite 600
Portland, ME  04101
207-774-6001
mcaterine@littler.com
Attorney for Defendant
Correct Care Solutions, LLC